## THE J. N. GILBERT.†

### THE SPINDLE TOP.

(Circuit Court of Appeals, Fifth Circuit. March 22, 1915.)

No. 2681.

1. COLLISION ⬥═71—MOVING AND MOORED VESSELS—NEGLIGENT MANEUVERS.
   A collision in the turning basin at Port Arthur, Tex., between a barge in tow alongside of a tug and a steamship lying at a dock, *held* due to the fault of the tug, in that it unnecessarily proceeded directly toward the steamship until so close that collision could only be avoided by reversing, which could not be done because of the breaking of a bolt in the reversing machinery.

   [Ed. Note.—For other cases, see Collision, Cent. Dig. § 101; Dec. Dig. ⬥═71.]

2. COLLISION ⬥═22—INEVITABLE ACCIDENT—DEFECTIVE MACHINERY.
   The breaking of a bolt in the reversing machinery of a tug, by reason of which a collision occurred, will not relieve the tug from liability on the ground of inevitable accident, where it appeared that the bolt had not been inspected for six years.

   [Ed. Note.—For other cases, see Collision, Cent. Dig. § 19; Dec. Dig. ⬥═22.

   Inevitable accident as cause of collision, see note to Wright & Cobb Lighterage Co. v. New England Nav. Co., 125 C. C. A. 130.]

Appeals from the District Court of the United States for the Eastern District of Texas; Gordon Russell, Judge.

Suit in admiralty by the Hoyle Bank Steamship Company, Limited, owner of the steamship Hoyle Bank, against the steam tug J. N. Gilbert and the barge Spindle Top; the Higgins Oil & Fuel Company, claimant. From a decree, both parties appeal. Affirmed.

F. D. Minor and F. D. Minor, Jr., both of Beaumont, Tex., for appellant and cross-appellee.

Stuart R. Smith, of Beaumont, Tex., for appellee and cross-appellant.

Before PARDEE and WALKER, Circuit Judges, and MAXEY, District Judge.

---

⬥═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
† Rehearing denied April 20, 1915.

PARDEE, Circuit Judge. This suit is for damages caused by a collision of the tug J. N. Gilbert and barge Spindle Top with the steamship Hoyle Bank in the harbor of Port Arthur, Tex. The libel charges as follows:

"Second. That on Wednesday, the 20th day of September, in the year nineteen hundred and eleven, the said steamship Hoyle Bank, with her steam engine, boilers, fixtures, apparel, and furniture on board thereof, was safely moored and lying in a usual and customary berth for such vessels, alongside the Texas Company's dock at Port Arthur, in Jefferson county, Texas, and in said Eastern district of Texas, and within the Beaumont division thereof, where she had a perfect right to be; the said steamship being then and also at the time when she was run into as hereinafter mentioned, tight, staunch, strong, and in every respect well-manned, tackled, appareled, and appointed, and having the usual and necessary complement of officers and men, and that the master and crew engaged on board were on the lookout for the protection and safety of said vessel.

"Third. That at about 12:30 o'clock p. m. of the said day, and while the said steamship was safely moored as aforesaid, the said tug J. N. Gilbert and barge Spindle Top in tow thereof, whereof —— was master, while engaged in the attempt to turn around in the turning basin at the Port Arthur docks for purposes unknown to libelant, and while so attempting to turn, and, while said steamship Hoyle Bank was moored as aforesaid alongside the docks facing said turning basin, and fully loaded and ready for sea, the said barge Spindle Top in tow of the said tug J. N. Gilbert, then and there with great force and violence ran into and upon the said steamship Hoyle Bank, and did thereby cause great damage and injury to the said Hoyle Bank, her guards, hull, and particularly her plates on the starboard side, where she was violently struck and rammed as aforesaid by the said barge Spindle Top, and her bulwark strake, shear strake, and two strakes below buckled, were indented, twisted, and displaced, and the rivets holding the same in place were loosened and dislodged, the angle iron forming waterways was buckled, twisted, and bent, and the rivets holding same in place were loosened and dislodged, and the waterway deck plate was bent, indented, and buckled, and her cargo, consisting of case oil, was greatly damaged.

"Fourth. That the said tug J. N. Gilbert and barge Spindle Top, before and at the time of the said collision, were attempting to make a turn in said basin for the apparent purpose of passing the said steamship Hoyle Bank, and berthing the said barge alongside the Guffey Company's loading racks, the said tug and barge being at the time inward bound, and that from the improper and unskillful management of the persons navigating said tug and barge, and on account of insufficient and defective machinery and gear wherewith the said tug was then and there being navigated, so that she was suddenly and with great violence driven upon and into the said steamship as aforesaid."

And it claimed damages in the sum of $10,500 on account of demurrage, loss of time, and damages to the vessel and cargo.

The answer of the claimant admits the collision, denies unskillful navigation, and asserts that the collision was caused by inevitable and unavoidable accident, which could not have been avoided by any care, caution, or nautical skill in—

"that a part of the equipment of the engine and gear of the tug was a valve rod stem connected with the reversing gear by a bolt or pin of approved metal. Said valve rod stem was of approved steel. It was, as was said bolt or pin, when installed in the tug, and apparently was at the time of said collision, such as a prudent and cautious owner might safely put into and employ upon his vessel, and no test thereof, save that of the hand and eye, was possible. It was, as was said bolt or pin, such as was adapted to the purpose for which it was used, and was such as was customarily used by prudent men engaged in the same business. It was, as was said bolt or pin, before and up to the oc-

currence of said collision, apparently sound and sufficient, and had been found by repeated experience and use, immediately prior to said accident, to be equal to, and adequate for, the purpose for which they were designed, constructed, and used. It, as well as said bolt or pin, had no defect which was known to the persons in charge of said tug and barge, or which could have been discovered by a person of competent skill and judgment acting with that degree of care and vigilance amounting, in all the circumstances, to ordinary care and prudence. That the cause of the failure to check the headway of the tug and barge was that said pin in the valve rod stem of the reversing gear connecting the valve rod stem with the cross head or beam on the piston rod to the valve of the reversing ram, had broken so that the engine did not reverse. That the breaking of said pin was not due to any patent defect therein, or in said valve rod stem, or in the connections therewith, nor to any mismanagement of the steering engine or gear, but was due to and caused by one or both of the following causes: Some unaccountable caprice of steam or a latent defect in the material of which the pin or rod was manufactured, which defect was not of such a character as that by such examination as it was possible, with an ordinary degree of prudence, foresight, care, and caution, to make, could be anticipated or discovered."

The fifth article of the answer is as follows:

"Fifth. The claimant admits, in respect to the sixth article of the libel, that it has refused to pay or secure the demands made by the libelant for the repair of the damages suffered by the steamship Hoyle Bank and for the alleged damage to its cargo; but claimant says, though, as it is informed and advised and believes, in no manner liable for any such damages, it did pay the sum of fifty ($50.00) dollars for temporary repairs to the steamship Hoyle Bank, in order that said steamship might obtain a certificate of seaworthiness; $15.70 for other expenses of said steamship arising out of said collision: $83.00 for surveys, certificate of seaworthiness, protests, etc., amounting in the aggregate to $148.70; which claimant says was paid by it and received by or for account of said steamship Hoyle Bank through a mutual mistake, and prays may be adjudged to be recovered by plaintiff from said libelant, or, in the event the libelant recovers any sum herein against this claimant, may be set off against and deducted from any such recovery."

Voluminous evidence was taken on the hearing before the District Court, and decree was rendered in favor of the libelant for the sum of $6,777.44 and all costs against the claimant and its surety.

The gist of the facts found by the court, as shown by the opinion of Judge Russell presiding, is as follows:

"I am not prepared to say that there was any improper maneuvering of the vessel. The testimony upon that subject is conflicting. There is evidence that the speed at which the tug approached the Hoyle Bank was too high a rate of speed. Upon the other hand, there is testimony to the effect that at the rate of speed at which it approached the steamship it could have been easily stopped, and could have been made to clear the steamship, without damage, but for the breaking of the bolt in question. In the state of the evidence, I am not prepared to find, and do not find, that the tug was improperly maneuvered, or that the rate of speed at which it approached the Hoyle Bank was too great under the circumstances. I believe I would be warranted in reaching the conclusion that, had the machinery not broken, the master of the tug would have been able to have cleared the Hoyle Bank without inflicting the damage. It is in evidence that the cause of the accident was the breaking of the bolt which was necessary for the master and those in charge of the tug to have reversed the engine of the tug and cause it to take the backward motion; that when the attempt was made to reverse the engine a bolt in that particular part of the machinery which the witnesses have described broke and put it out of the power of the master to reverse the engine of the tug, and thereby clear the steamer Hoyle Bank. It is contended by the libelant in the case that there was no inspection of the bolt,

and that an inspection of it would have discovered the defect in it and thus have avoided the injury. My recollection of the testimony is that the tug was built in 1902, and one of the witnesses testified that either two or three years after the tug was built it was taken to Mobile and overhauled, and he testified that this bolt was taken out and replaced. Whether it was the same bolt or another that was put back is a matter that is unimportant, because if he took the bolt out to examine it, and concluded it was sufficient for the purposes, it would not make a particle of difference whether he put in a new bolt or replaced the old one. I do not recall any other occasion when the bolt was taken out and examined. If the tug was built in 1902, and the examination and inspection was had three years afterwards, that would be 1905, and the collision occurred in September, 1911, thus leaving the bolt for six years without inspection. The evidence is attended with a great deal of uncertainty as to the amount of damage growing out of the demurrage charges and the surveys. It shows, for instance, that a survey was made at Rosario which cost $35 in Argentine gold, and no basis is made by which I can discover how much American money $35 in Argentine gold would represent. The amount of demurrage charges paid by the libelant at Pensacola, New York, and Port Arthur is left in a state of such uncertainty that I could not determine how much they amount to."

Both parties appealed to this court; the claimant assigning as error the incorrect finding in regard to the broken bolt, and the libelant assigning as error the failure to allow claims for surveys and demurrage.

The case shows that the Hoyle Bank, a British steamship, loaded and headed seaward, was tied up at the Texas Company dock, south bank of the turning basin in Port Arthur. Her length over all was 340 feet, breadth 47 feet, and her gross tonnage 5,300 tons. The turning basin had a width of 451 feet. The tug J. N. Gilbert, a screw steamer, was built in 1902, with a keel length of 74 feet, length over all of 83 feet, about 42 gross tonnage, drawing 9 feet 3 inches aft, and about 6 feet forward. The barge Spindle Top was wooden built, with a length of keel and over all of about 152 feet, a breadth of 31 feet, 389 gross tonnage, draft 3 feet aft, and 2 to 3 feet forward. This barge lay at the coal dock, on the north side of the turning basin, to be moved to the Guffey dock, on the south side of the turning basin, and nearly opposite and a short distance ahead of where the Hoyle Bank lay. To make such movement the tug Gilbert was securely lashed to the starboard side of the barge, so that the tug at her bow was about 12 or 15 feet abaft the mainmast of the barge, and her stern extended about 20 to 25 feet astern. Being thus attached, the tug proceeded with the barge along the north side of the turning basin until fully abreast of the Hoyle Bank, and then, turning, swung round in the general direction of the steamer Hoyle Bank, and, having turned, proceeded at a speed of not less than four miles an hour directly towards the Hoyle Bank, and approached so near that a collision with the Hoyle Bank could not be avoided by changing the course, and then the helms of both tug and tow were put hard-a-port, and on the tug one bell was given to stop, and two bells to back, the engine of the tug was stopped, but the backing failed; the reversing machinery would not work, because a certain bolt upon which its operation depended broke at the strain put upon it, and the barge collided with the Hoyle Bank, inflicting damage as charged in the libel.

As the Hoyle Bank was tied up at the landing, and the tug and barge had a clear field in the turning basin, the Hoyle Bank was with-

out fault in the premises, and the tug and barge must be held responsible for the collision, unless excused upon the ground that it was an unavoidable and inevitable accident. The Virginia Ehrman, 97 U. S. 309, 24 L. Ed. 890. In The Merchant Prince, [1892] L. R. Prob. Div. 179, the rule with regard to inevitable accident is declared as follows:

"The burden rests on the defendants to show inevitable accident. To sustain that, the defendants must do one or other of two things: They must either show what was the cause of the accident, and show that the result of that cause was inevitable, or they must show all the possible causes, one or other of which produced the effect, and must further show with regard to every one of these possible causes that the result could not have been avoided. Unless they do one or other of these two things, it does not appear to me that they have shown inevitable accident."

See The Olympia, 61 Fed. 123, 9 C. C. A. 393; The Edmund Moran, 180 Fed. 700, 104 C. C. A. 552.

The libelant's contention is (1) that the tug and barge were improperly maneuvered in proceeding from the coal dock to the Guffey dock, in that (a) they should not have been moved head on towards the ship; (b) that they were put to too great speed in approaching the ship; (c) that they approached too close to the ship before an attempt was made to reverse the motion, going at the speed they were. (2) That if the pin in the reversing machinery broke, and contributed to the causes of the collision, the claimant was negligent in operating with an old, broken pin, the condition of which would have been discovered by the use of ordinary care.

The trial court, as stated above, found that the collision was not chargeable to improper maneuvering of the tug and barge, but was due to negligence in respect to the reversing machinery, in that the bolt which broke and rendered the machinery inoperative had been in use and not inspected for six years. In our view of the evidence the claimants failed to exonerate the tug and barge from want of due care either as to maneuvering or as to the broken bolt, and we attribute the collision to both.

With a field practically clear in the turning basin, the tug and barge had no right nor even occasion to shape their course so as to run head on towards the Hoyle Bank, and thus approach so close and under such speed and full headway as to render a collision, not only probable, but unavoidable, by the ordinary use of the steering machinery, and only possibly avoidable by the use of the reversing machinery to overcome the headway of the tug and barge.

As to the broken bolt, we concur with the trial judge in his finding of negligence in respect thereto. See The Edmund Moran, supra.

On the cross-appeal, we concur with the trial judge in his reasons for disallowing the charges for demurrage. In collision cases the usual rule, after settling the question of responsibility of the parties, is to refer the case to a commissioner for proof of damages. In this case the libelant made insufficient proof as to its damages, and submitted the same to the judge, and he correctly ruled on the evidence presented.

The decree of the District Court is affirmed on both appeal and cross-appeal, each party to pay his own costs.