## AMERICAN CO. FOR INTERNATIONAL COMMERCE v. UNITED STATES.

## NEW YORK BUTCHERS' DRESSED MEAT CO. v. SAME.

District Court, S. D. New York. May 2, 1928.

1. Shipping ⬅141(4)—Shipowner has burden to exercise due diligence to make ship seaworthy (Harter Act, §§ 2, 3 [46 USCA §§ 191, 192]).

Both section 2 of Harter Act (46 USCA § 191; Comp. St. § 8030), prohibiting clauses in bill of lading relieving from exercise of diligence in equipping, etc., vessels, and section 3 (46 USCA § 192; Comp. St. § 8031), limiting liability for errors of navigation, dangers of sea, etc., cast burden on shipowner to exercise due diligence to make ship seaworthy.

2. Collision ⬅125—Where collision causing damage to cargo was caused by defective steering mechanism, facts held to show causal connection between unseaworthiness of ship and damage to cargo.

Where collision was due solely to fact that ship was unmanageable practically from start, owing to defective jammed steering gear, facts held to show causal connection between unseaworthiness of ship and damage to cargo.

3. Shipping ⬅132(3)—Burden of proof is on shipowner to show due diligence in making ship seaworthy.

In action for damage to cargo, burden of proof is on shipowner to show due diligence in making ship seaworthy.

4. Collision ⬅13—Shipowner held negligent in failing to exercise due diligence to properly equip vessel, where loose key caused jamming of steering mechanism resulting in collision damaging cargo.

Shipowner held negligent in failing to exercise due diligence to properly equip vessel and make her seaworthy, where loose key in one of sets of gears connected with steering mechanism caused jamming of steering gear, resulting in collision with another ship and damage to cargo.

Actions in admiralty by the American Company for International Commerce and the New York Butchers' Dressed Meat Company against the United States, as owner of the steamship West Calumb, for damage to cargo. Decree for libelants.

Bigham, Englar & Jones, of New York City (T. Catesby Jones and Ezra G. Benedict Fox, both of New York City, of counsel), for libelants.

Charles E. Tuttle, U. S. Atty., of New York City (Horace M. Gray, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

WINSLOW, District Judge. These cases are representative of twenty-one actions in admiralty against the United States, as owner of the West Calumb, for damage to cargo laden on board that vessel at Greenport, Brooklyn, N. Y., in December, 1922, and January, 1923. By stipulation, the same evidence applies to all of the suits.

The West Calumb left her loading berth in Brooklyn at 10:02 on the morning of January 12, 1923, with miscellaneous cargo, bound for the Near East. She was assisted by tugs into the stream. The first engine movements were at 10:15 a. m. Within seventeen minutes thereafter, while maneuvering down the river, the steering wheel jammed, and she became unmanageable. Danger signals were blown, the engines were put in reverse, but she was struck on the starboard side by the steamship Western Plains inbound, driving a hole in the region of No. 1 hold. The West Calumb soon settled by the head, and sank at a dock on the Brooklyn side, with thirty feet of water in her No. 1 hold.

Immediately after the West Calumb's sinking, the captain went ashore to inform his employers of the accident. Upon his return from one-half to three-quarters of an hour later, he found that the wheel was amidship, and was now working freely, although when he had left the ship it was jammed solid hard astarboard.

There can be no doubt that a loose key in one of the sets of gears connected with the

steering mechanism was the cause of the jamming. This loose key which caused the trouble was produced in court. There was a score mark on the vertical shaft opposite this key. This score mark was plainly visible to witnesses who examined the gears immediately after the accident. This key was short and . therefore loose. This defective key must have been apparent if due diligence had been exercised by inspection, as competent and convincing witnesses have testified. Arguments by counsel were interesting, but unconvincing, inasmuch as it was demonstrated with the identical mechanism at the trial, to the court's satisfaction, that this loose key could and did cause the wheel to jam.

[1] The defense rests upon the second section of the Harter Act (46 USCA §' 191; Comp. St. § 8030), as follows:

"Sec. 2. That it shall not be lawful for any vessel transporting merchandise or property from or between ports of the United States of America and foreign ports, her owner, master, agent, or manager, to insert in any bill of lading or shipping document any covenant or agreement whereby the obligations of the owner or owners of said vessel to exercise due diligence properly equip, man, provision, and outfit said vessel, and to make said vessel seaworthy and capable of performing her intended voyage, or whereby the obligations of the master, officers, agents, or servants to carefully handle and stow her .cargo and to care for and properly deliver same, shall in any wise be lessened, weakened, or avoided."

Respondent argues that there is no obligation whatever upon the shipowner to show that he used due diligence to make the ship "in all respects seaworthy," in order to rely upon the exceptions in the bill of lading, as he would otherwise be bound to do when he relies upon the third section of the Harter Act to relieve him from the negligence of the officers in the navigation or management of the ship. Apparently respondent contends that section 2 of the Harter Act provides for a lesser degree of diligence than that required by section 3 (46 USCA § 192; Comp. St. § 8031). To my mind, both sections cast the burden on the shipowner to exercise "due diligence" to make the ship seaworthy. I cannot conceive of varying degrees of "due diligence."

[2] Respondent also contends that there is no causal connection between the unseaworthiness of the ship and the loss. The collision was due solely to the fact that the ship was unmanageable practically from.the start, owing to the defective jammed steering gear.

It is hypertechnical to say·that there is no causal connection between the damage.resulting from a collision of an unmanageable ship moving across the bow of another ship and the consequent sinking of the unmanageable ship. Respondent apparently thinks the sinking was due to a peril of the sea.

The respondent offers no explanation of the jamming of the wheel, but seems to be content to rest on the position that the collision was inevitable accident. But the cause of the collision is known; i. e., the defective (unseaworthy) steering gear, undiscovered owing to failure of the owner to exercise due diligence. The resultant damage to cargo is the logical sequence.

[3, 4] The burden of proof is upon the shipowner to show due diligence in making a ship seaworthy. Not only was the ship unseaworthy, but it is quite apparent that the shipowner was negligent in failing to exercise due diligence to properly equip the vessel and make her seaworthy.

Decree for libelant.