**DAVIS, Secretary of War, et al. v. GULF & I. RY. CO. OF TEXAS et al.**

Circuit Court of Appeals, Fifth Circuit.
March 4, 1929.

No. 5487.

H. M. Holden, U. S. Atty., and Howell Ward, Asst. U. S. Atty., both of Houston, Tex., for appellants.

Ballinger Mills, of Galveston, Tex. (E. E. McInnis, of Chicago, Ill., and Terry, Cavin & Mills, of Galveston, Tex., on the brief), for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. The notice prescribed by 33 USCA § 502, for the alteration of a railroad bridge over a navigable waterway of the United States, was given by the Secretary of War to the companies owning and operating the railroad. That notice recited that the United States was engaged in the work of constructing the Louisiana and Texas Intracoastal Waterway from the Mississippi river, near New Orleans, to Corpus Christi, Tex., in accordance with the plan adopted by Congress in the River and Harbor

Act approved March 3, 1925, 43 Stat. 1186; that Mud Bayou, in Texas, constituted a part of that waterway, and that the railroad bridge over it was an unreasonable obstruction to free navigation; and required that bridge to be so altered as to provide a draw over Mud Bayou, "with unlimited vertical clearance with the draw open, and a horizontal clearance between fenders of eighty (80) feet normal to the center line of the channel." Upon the application of the railroad companies interested, the District Judge, being of opinion that under the evidence Mud Bayou was not a navigable waterway, issued an injunction against the enforcement of the statutory penalties.

Mud Bayou winds its way through a salt marsh from Mud Lake to East Bayou. Mud Lake is a shallow depression in the marsh; in which water collects after heavy rains. East Bay Bayou connects, through East Bay, with Galveston Bay. Mud Bayou, where the railroad crosses it, is 50 feet wide and 4 feet deep at its center. Upstream it gradually becomes narrower and shallower; at Mud Lake it is about 20 feet wide and 2 feet deep. Above the railroad bridge the minimum depth is 1 foot, and the average depth is about 3 feet. As is usual with such streams, it is not of uniform depth from bank to bank, and is very crooked. The marsh is uninhabited, and no commerce has ever moved through it. Mud Bayou constitutes a part of the Intracoastal Waterway only in the sense that the proposed canal would strike it at the railroad crossing.

A navigable waterway is one that in its natural state is capable of affording a highway for useful commerce. The Daniel Ball, 10 Wall. 557, 19 L. Ed. 999; The Montello, 20 Wall. 430, 22 L. Ed. 391; Leovy v. United States, 177 U. S. 621, 20 S. Ct. 797, 44 L. Ed. 914; Brewer-Elliott Oil & Gas Co. v. United States, 260 U. S. 77, 43 S. Ct. 60, 67 L. Ed. 140. In the Leovy Case, the Supreme Court rejected the view that a stream was navigable on which a skiff or small lugger could float. That case was cited with approval in Oklahoma v. Texas, 258 U. S. 574, 581, 42 S. Ct. 406 (66 L. Ed. 771), and is therefore not to be construed as having been overruled by the decision in Economy Light Co. v. United States, 256 U. S. 113, 41 S. Ct. 409, 65 L. Ed. 847. In the last-mentioned case the Desplaines river was held to be a navigable waterway in its natural state, capable of floating vessels of light draft loaded with several tons of freight, and until 1825 had been an important avenue of commerce. In later years its navigability had been

affected by drainage and artificial obstructions. In effect it was held that, when restored to its natural state, the river was navigable and capable of being used in a substantial way as a highway for commerce. Mud Bayou is nothing but a mere drain in a salt marsh. It is so shallow and crooked that in its natural state it is incapable of being used as an aid to commerce.

The decree is affirmed.