76 F.2d 561 (1935)
THE LUCKY LINDY.
DRAGON et al.
v.
UNITED STATES.
No. 7471.
Circuit Court of Appeals, Fifth Circuit.
March 21, 1935.
*562 Joseph A. M'Caleb, of New Orleans, La., for appellants.
Rene A. Viosca, U. S. Atty., and Saul Stone and Robert Weinstein, Asst. U. S. Attys., all of New Orleans, La.
Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.
HUTCHESON, Circuit Judge.
Appellants are claimant and surety on a $1,000 stipulation for the release of the gas screw Lucky Lindy to her owner. The decree from which they appeal adjudged the Lindy forfeit to the United States for statutory violations, and that appellants pay the $1,000 they had stipulated for. Appellants do not claim here that the Lindy was without guilt. They claim that because she was first seized by the Collector in Franicovich's Canal,[1] which they say is not a public navigable water of the United States, that the court, as a court of admiralty, was without jurisdiction to adjudge her guilty and order them, as stipulators for her release, to pay. They say, *563 too, that the stipulation and bail bond they entered into is void for failure to comply with the statutory provisions governing seizures by the Collector (28 USCA § 736), and that the decree against them is void too, because entered on the day of the forfeiture, instead of, as the statute (28 USCA § 751), provides, after they had failed for twenty days to pay. There is a further attack upon the decree that no findings of fact and conclusions of law were filed. While appellants rely on these procedural points, they make them subordinate to the jurisdictional point, which is greatly labored. We think appellants gravely misconceive the nature and extent of the jurisdiction exercised, the effect of the facts underlying its exertion, and their own situation with reference to it.
"Previous seizure of property under an order of the executive" is not, as it was under the Confiscation Act (12 Stat. 589) cases appellants cite,[2] "an essential preliminary to give jurisdiction to the court to adjudge the forfeiture and decree the condemnation." The jurisdiction of the forfeiture and condemnation here rests on a statute, 28 USCA § 41, subd. 3, which extends to all causes of admiralty and maritime jurisdiction. Under that statute the place where the vessel was at the time when the libel was filed determines the jurisdiction. When the libel of information was filed, the Lindy was in the Harvey Canal, admittedly a public waterway in the possession of the Collector of Customs. Whether the original seizure was valid or invalid is therefore immaterial. The Underwriter (C. C. A.) 13 F.(2d) 433; U. S. v. One Ford Coupe, 272 U. S. 321, 47 S. Ct. 154, 71 L. Ed. 279, 47 A. L. R. 1025; Dodge v. U. S., 272 U. S. 530, 47 S. Ct. 191, 71 L. Ed. 392; United States v. Story (C. C. A.) 294 F. 517; The Halcon (C. C. A.) 63 F.(2d) 638; The Conejo (C. C. A.) 16 F.(2d) 264. But the original seizure was in navigable waters. Waters navigable in fact for trade or commerce are navigable in law. The Daniel Ball, 10 Wall. 557, 19 L. Ed. 999; The Montello, 20 Wall. 430, 22 L. Ed. 391; U. S. v. Holt Bank, 270 U. S. 49, 46 S. Ct. 197, 70 L. Ed. 465; and this includes canals, and other waters privately owned or claimed. Exparte Boyer, 109 U. S. 629, 3 S. Ct. 434, 27 L. Ed. 1056; Guinan v. Boston (C. C. A.) 1 F.(2d) 239; Silver Springs Paradise Co. v. Ray (C. C. A.) 50 F.(2d) 356.
Appellants, to support their view that the Franicovich Canal is not a navigable water, to which the admiralty and maritime jurisdiction extends, rely on Gulf & I. R. Co. v. Davis (D. C.) 26 F.(2d) 930; Id. (C. C. A.) 31 F.(2d) 109; United States v. Doughton (C. C. A.) 62 F.(2d) 936; Leovy v. United States, 177 U. S. 621, 20 S. Ct. 797, 44 L. Ed. 914; United States v. President, etc., of Jamaica (C. C. A.) 204 F. 759. These cases are concerned not with admiralty and maritime jurisdiction, but with the power of Congress over public waters susceptible of being used as highways for interstate or foreign commerce. The argument that they measure the limits of admiralty jurisdiction "is a complete misconception of what the admiralty jurisdiction is under the Constitution of the United States. Its jurisdiction is not limited to transportation of goods and passengers from one state to another, or from the United States to a foreign country, but depends upon the jurisdiction conferred in article 3, § 2, extending the judicial power of the United States to all cases of admiralty and maritime jurisdiction."
Mr. Justice Clifford, in The Belfast, 7 Wall. 624, 640, 19 L. Ed. 266, said: "Difficulties attend every attempt to define the exact limits of admiralty jurisdiction, but it cannot be made to depend upon the power of Congress to regulate commerce, as conferred in the Constitution. They are entirely distinct things, having no necessary connection with one another, and are conferred, in the Constitution, by separate and distinct grants." Citing The Genesee Chief, 12 How. [443] 452 [13 L. Ed. 1058]. See, also, In re Garnett, 141 U. S. 1, 15 [11 S. Ct. 840, 35 L. Ed. 631]; Ex parte Boyer, 109 U. S. 629-632 [3 S. Ct. 434, 27 L. Ed. 1056]; The Propeller Commerce, 1 Black, 574, 578 [17 L. Ed. 107]. London Co. v. Industrial Commission, 279 U. S. 109, 124, 49 S. Ct. 296, 73 L. Ed. 632. c/f United States v. Doughton, supra, at page 940 of 62 F.(2d).
The procedural points appellants make are without merit. To obtain the release of the vessel they voluntarily gave the stipulation. They effected their purpose by giving it. They may not complain because they are held to it. Indemnity Ins. Co. of North America v. United States (C. C. A.) 74 F.(2d) 22; Gulf States Steel Co. v. United States, 287 U. S. 32, 53 S. Ct. *564 69, 77 L. Ed. 150; United States v. John Barth Co., 279 U. S. 370, 49 S. Ct. 366, 73 L. Ed. 743; United States v. Root (C. C. A.) 62 F.(2d) 385.
The failure of the court to file findings of fact and conclusions of law did not prejudice appellants. The stipulation and the record show the facts and the law all one way. Findings were unnecessary.
The decree is affirmed.
NOTES
[1] It was stipulated of this canal: "The Franicovich Canal at Ostrica * * * is cut through private property, one Joseph, or Joe Franicovich being the owner thereof. It is assessed for taxes at $300.00. It is about 35 or 40 feet wide, and about one and one half mile in length, and has a high water draft of not more than 8 feet. This Canal is cut and extends from the levee of the Mississippi River to Bayou Tourtillon. It has no outlet of any kind into the Mississippi River. Bayou Tourtillon is navigable from Franicovich Canal to Quarantine Bay and thence to Breton Sound, which leads into the Gulf of Mexico. The character of water crafts using and paying tolls to its owner for the use thereof is principally motor, oyster and fishing luggers of ten tons and less. The Franicovich Canal is used by fishermen and hunters in transporting their wares from Bayou Tourtillon to the end of said Franicovich Canal at Ostrica, Louisiana. The wares of these fishermen are unloaded at the end of the Canal, carried across the levee and placed on boats or packets plying up and down the Mississippi River from New Orleans to Mississippi River lower coast points. Joe Franicovich, owner of the Canal, also conducts a ferry from Ostrica to Buras, Louisiana, which ferry is used by the public, upon payment of the charges levied by him. This ferry is the only public ferry that crosses the Mississippi River in this vicinity, the nearest ferry thereto being thirty miles away, at Point-a-la-Hache. At the end of the Canal, adjoining the levee, there is a shipyard, owned and operated by Joe Franicovich. He exacts no toll for the use of the Canal from those who use his shipyard. He rents the use of his ways and shipyard to the public generally, and also furnishes mechanical services, in connection therewith, if desired. The public generally use the Canal, without payment of toll, the toll being limited to professional fishermen."
[2] U. S. v. Winchester, 99 U. S. 372, 25 L. Ed. 479.