THE L. V. 472.

THE MARGARET MESECK.

THE AUGUSTINE.

No. 16980.

District Court, E. D. New York.

June 9, 1945.

Pyne & Lynch, of New York City (Warner Pyne, of New York City, of counsel), for Lehigh Valley R. Co., libellant.

Purdy & Lamb, of New York City (Thomas Irving, of New York City, of counsel), for Meseck Towing Lines.

Crowell & Rouse, of New York City (George L. Varian, of New York City, of counsel), for Todd Shipyards Corporation.

GALSTON, District Judge.

The Lehigh Valley Railroad Company, as the chartered owner of the. lighter L. V. 472, filed its libel against the steamtugs Margaret Meseck and Augustine, of the Meseck Towing Lines, Inc., for damage to the lighter.

On the morning of February 7, 1943, the L. V. 472 lay moored at the outer end of Pier No. 3, Erie Basin. On that morning the three tugs of the Meseck Towing Lines, Inc., including the two tugs in question, and the Edward Meseck, towed the steamship Bulkoil from Drydock No. 4 of the Todd-Robbins plant. The drydock was somewhat to the northward of Pier No. 3, Erie Basin. While the Bulkoil was thus in tow it was a dead ship, i. e. it was without steam. As the tugs towed the steamship clear of the drydock, a strong wind from the west came up, striking the steamship on her port side. This caused the steamer to sag or drift to starboard, and the tugs failing fully to control her movements, the steamer came in contact with the lighter.

The tugs are, of course, presumptively at fault for bringing their tow into collision with a moored steamship. The Crown of Galicia, 2 Cir., 232 F. 305; The J. N. Gilbert, 5 Cir., 222 F. 37; Louisville & Cincinnati Packet Co. v. United Coal Co., 6 Cir., 223 F. 300.

The evidence discloses a failure on the part of the claimant-respondent to meet the presumption of fault, and indeed it discloses actual fault on the part of the Meseck Towing Lines, Inc. On February 6, 1943, that company had been engaged, by oral agreement with the Todd Shipyards Corporation, respondent-impleaded. The agreement provided for Meseck Towing Lines, Inc., to supply tugs on the morning of February 7, 1943 for the purpose of shifting the steamship Bulkoil from Drydock No. 4 to the north side of Pier No. 3 of the Todd-Robbins plant (this is not the same as Pier No. 3 of Erie Basin). During the shifting operation the captain of the Edward Meseck was on the bridge of the Bulkoil and directed the operations. Neither he nor anyone connected with the Meseck Towing Lines, Inc., had made inquiry concerning weather conditions to be expected that morning. It appears, however, that the United States Weather Bureau, on February 6, 1943, and February 7, 1943, had issued storm warnings for small craft for an area in and around New York Harbor, which included Erie Basin. It also appears that a red pennant was hoisted at the United States Weather Bureau display station from the Whitehall Building on

154

the morning of February 6, 1943, which signal indicated that the force of the wind was to be up to 40 miles an hour. The signal flag remained on display from that time continuously throughout the day of February 7, 1943. Moreover, it appears that despite war time regulations, information concerning weather conditions was given by the New York Weather Bureau to the United States Coast Guard and the United States Navy, railroads and tow boat companies, and to other properly identified companies or persons. The weather data furnished for February 6th and February 7th recited the small craft storm warnings which have been referred to. Failure of the Meseck Towing Lines, Inc., or of the captains of the tugs, to procure such information as has been indicated, contributed to the happening of this collision, for the three tugs were unable to hold the Bulkoil against the wind.

The respondent-impleaded is charged by the claimant-respondent with fault in failing to have a free berth for the Bulkoil at the time that the captain of the Edward Meseck was informed by a representative of the Todd Shipyards Corporation that the Bulkoil was ready to be taken off the dry-dock. The Bulkoil was shifted from the drydock at about 7:55 A. M. and maneuvered over towards the breakwater. There is some contradiction in respect to the length of time during which the tow was thus held near the breakwater, pending the shifting of the steamer Salinas by the Dalzell tugs from Pier 3. It was the testimony of Layden, the dock-master of the Todd Shipyards, that at the time of making the oral charter he had instructed Captain Knudsen, a dispatcher for the Meseck Towing Lines, Inc., that the Bulkoil was to exchange berths with the Dalzell Towing Co., Inc., and arrange the time of arrival of tugs so that all tugs would reach Erie Basin between 7:30 and 8 A. M. on February 7th, 1943. There is no testimony to show that the Meseck Company or any one in its employ, and the Dalzell Company or anyone in its employ, had agreed with each other as to the time when their respective tugs would initiate their shifting operations. The burden imposed upon the captain of the Meseck tugs was to see not only that he took the Bulkoil off the ways, but also to know about when the Salinas would clear Pier 3.

In consequence the Meseck tugs and the Towing Company must be charged with sole fault in bringing about the damage to the L. V. 472. Accordingly the libellant may have a decree against the claimant respondent, and the impleading petition against the Todd Shipyards Corporation will be dismissed.

Appropriate findings of fact and conclusions of law will be filed herewith.