## TRI-CITIES SHELL & BUILDING MATE-RIALS SUPPLY CO., Inc. v. WELCH. THE LUCY D.

### No. 849.

United States District Court
S. D. Texas, Houston Division.

Oct. 16, 1950.

Franklin, Kelly & Fellbaum, T. G. Schirmeyer, of Houston, Tex., for libelant.

Clarence S. Eastham, of Houston, Tex., for respondent.

KENNERLY, Chief Judge.

The Libellant, Tri-Cities Shell & Building Materials Supply Company, Inc., is and has been for some time engaged in the sale, shipping, etc. of shell and other building materials on or in the vicinity of the Houston Ship Channel in Harris County, in this District and Division. On or about March 4 or 5, 1948, it owned and had owned since about October 1947 the wooden Barge H–14. Such barge was used principally by libellant in transporting shell, etc. from Smith's Point near Red Fish Reef in Galveston Bay, to libellant's place of business. Such barge, sometimes loaded and sometimes empty, was towed by tugs on the waters of Galveston Bay, Houston Ship Channel, etc. back and forth between the two points named.

Respondent, L. C. Welch, on or about March 4 or 5, 1948, owned the Tug Lucy D, which he had a few months previous purchased from libellant, paying part cash and the balance on credit. There was an agreement between libellant and Welch that he would use The Lucy D to tow the barges of libellant in transporting shell, etc., and that Welch would be paid as towage so much per thousand cubic feet for the shell transported on libellant's barges. A part of his earnings were to be and were credited from time to time on what he owed libellant as purchase money for The Lucy D.

The Lucy D was poorly equipped, and Welch was entirely without funds with

which to pay for equipment for, and to pay for the upkeep and the expenses of operations of, The Lucy D. He was also without credit and looked solely and only to libellant for financial help. Accordingly libellant agreed to furnish Welch from time to time money for equipment and upkeep for and operation of the Tug Lucy D, the amount of which should likewise be taken out of Welch's earnings.

On or about March 4, 1948, libellant called upon and directed Welch with The Lucy D to tow the empty Barge H–14 from libellant's place of business to Smith's Point for a load of shell. Welch undertook to do so. He made up The Lucy D to the starboard quarter of the empty Barge H–14 with such tow lines as he had and that were available for him, and started on his way to Smith's Point. He navigated in a southerly direction along the Ship Channel, thence in an easterly direction towards Smith's Point. After leaving the Houston Ship Channel and some time after midnight on March 4, 1948, such tug and barge encountered a strong northwest wind, during which time one of the lines between the tug and the barge broke, and the tug and the barge collided. The barge swung around with its stern towards the tug, and was thereafter towed stern first, the tug pulling her. The barge soon showed signs of sinking, and the Tug Lucy D, with the remaining lines, towed her on, seeking shallow water. Finally the barge was let loose by the tug and sank in about nine feet of water, was never raised, and became a total loss.

This suit is by libellant against Welch to recover the value of such barge.

The facts, in addition to those stated above, are substantially as follows:—

(a) The evidence shows beyond question, and I find, that the Barge H–14 was at and before the time that Welch undertook to tow her, old, decrepit, in bad repair, and unseaworthy. She was built about 1918, and it was unsafe to use or navigate her in the waters where she was used. This was well known to libellant.

(b) Libellant in Paragraph V of its Amended Libel charges respondent with the following acts of negligence:—

"3. The Tug Lucy D was not properly made up to the barge H–14."

"5. The Tug Lucy D negligently left Morgan's Point and land locked waters in spite of bad weather.

"6. The barge H–14 under the circumstances should have been towed from ahead and not from the side."

"8. The tug Lucy D failed to tow the barge H–14 to a buoy or mooring in adequate time to prevent the Lucy D from colliding with the H–14.

"9. The Lucy D had an inadequate and inexperienced crew and was not properly manned.

"10. The master of the Lucy D mismanaged the barge.

"11. The master of the Lucy D failed to keep his tug from colliding with the Barge H–14.

"12. The master of the Lucy D so navigated his tug as to cause said tug to knock a large hole in the starboard side of the barge H–14.

"13. The respondent failed to provide sufficient and adequate fenders to prevent the tug Lucy D from colliding with the side of the barge and knocking a large hole in same."

I find that respondent was not negligent as charged in the above quoted sub-paragraphs 3, 5, 6, 8, 9, 10, 11, 12 and 13.

There was no negligence in the way the tug and barge were hooked up nor in the way the barge was towed. I do not find that the weather was unfavorable, bad, or dangerous when The Lucy D and her tow reached and passed Morgan's Point, and there was no negligence in The Lucy D and her tow proceeding nor in the way they proceeded on the voyage. When they encountered bad weather, the evidence does not show that either Welch or The Lucy D was in any way negligent in navigating The Lucy D and her tow either before or after the line broke. Apparently the sinking of the Barge H–14 was caused by the collision between such tug and such barge, and the collision was caused by the breaking of the tow lines, but I do not think that the hole that was found to be in the barge after she sank was caused immediately by the colli-

sion. If such hole had been caused immediately by the collision, the barge would have immediately sunk. I think the blow received by the barge from the tug in the collision was not sufficient to cause the hole to be in her immediately, and if the barge had been strong, sturdy, well built, and equipped and seaworthy, the blow which she received from the tug would not have injured her nor caused her to sink. Because she was old and decrepit and unseaworthy, the blow she received caused an injury which was finally by the wind and waves enlarged into the hole, causing her to sink.

(c) I find respondent guilty of negligence as charged by libellant in Sub-Paragraphs 1, 2, 4, and 7 of Paragraph V of its Amended Libel, as follows:—

"1. The Tug Lucy D did not have proper and adequate lines to tow the libelant's barge.

"2. The towing lines on the Lucy D were unsound and insufficient."

"4. The tug Lucy D did not have proper towing equipment and towing lines."

"7. The tug Lucy D was unseaworthy and not properly maintained and equipped for the towage of the H–14 under the circumstances then prevailing."

But such findings of negligence are with this qualification. The evidence shows that while the Tug Lucy D was in fairly good shape and safe for navigation in waters in which she was being navigated, her tow lines and other lines were too short and were old and worn out. The Lucy D was seaworthy except insofar as her tow lines were concerned. However, the condition of her tow lines was fully known to libellant at and before the beginning of the voyage mentioned, and libellant was obligated under its agreement with Welch to furnish him with proper and safe lines. Welch had requested libellant to furnish such lines, and it had failed to do so, although it knew that Welch was not able to obtain or furnish them himself. Libellant well knew that Welch must use the faulty tow lines he did use.

I think the law is plain. The cause of the sinking of the Barge H–14 was the collision with the Tug Lucy D. The cause of the collision with the Tug Lucy D was, as stated, her defective tow lines. Under the facts here, libellant is responsible for the condition of the tow lines and may not recover. Further, but for the unseaworthy condition of the Barge H–14, she would not have been injured by such collision.

Judgment for respondent. Let proper decree be drawn and presented.