**DOW CHEMICAL COMPANY, Plaintiff,**

v.

**DIXIE CARRIERS, INC., Defendant.**

**Civ. A. No. 69–H–214.**

United States District Court,
S. D. Texas,
Houston Division.

Aug. 26, 1971.

**1306**

Robert Eikel, Eikel & Davey, Houston, Tex., for plaintiff.

C. L. Solomon, Hinds & Meyer, Houston, Tex., for defendant.

BUE, District Judge.

## MEMORANDUM OPINION

This is an admiralty collision action for damages resulting from three separate incidents, all of which occurred when a barge in the tow of the tug, DOW HUSTLER, collided with a railroad bridge's fender system at a point where the bridge crosses diagonally over a privately owned barge canal. The tug was owned and demise chartered by Dow Chemical Company (Dow) to Dixie Carriers, Inc. (Dixie), and it was then operated by Dixie for the exclusive use of Dow in and around Dow's barge canal pursuant to a time charter. The barge canal which is more than five miles long, approximately 100 feet wide and 12 feet deep is located at Freeport, Texas, and it connects the two Dow plants located at opposite ends of the canal with the Intracoastal Waterway which, in turn, gives access to the Gulf of Mexico. A "skimmer gate" separates the Dow barge canal from the Intracoastal Canal. This "skimmer gate" is visible above the water when the gate is raised or closed, and it is dropped a number of feet below the surface when it is opened to permit barges and other vessels to enter or leave the barge canal.

The plaintiff seeks to recover damages in the amount of $17,305 which reflect the total costs allegedly incurred by Dow in repairing and replacing the damaged fender system. The parties have stipulated that the barges actually did strike the fender system at the bridge site on the three occasions. It is uncontested that this cause is within the admiralty and maritime jurisdiction of this Court pursuant to 46 U.S.C. § 470. What is contested is Dow's contention that Dixie's negligence caused the collisions and Dixie's position that Dow's bridge system is an unlawful obstruction to navigation and that Dow has no valid basis for recovery anyway, either as a consequence of its own negligence or under the terms of the charter party. As is frequently the case in maritime collision litigation, there is considerable inconsistency in the testimony obtained from certain of the witnesses. Accordingly, this Court has been obligated to weigh carefully the credibility of the witnesses rendering such disparate versions and to select the more probable account in the light of the other proof forthcoming at the trial.

Dow initially relies upon the well established presumption in admiralty law that a moving vessel which strikes a vessel at anchor or a fixed object is presumptively at fault. The Oregon, 158

U.S. 186, 187, 15 S.Ct. 804, 39 L.Ed. 943 (1895); The Victor, 153 F.2d 200, 202 (5th Cir. 1946); Placid Oil Co. v. S. S. Willowpool, 214 F.Supp. 449, 451 (E.D. Tex.1963); Continental Oil Co. v. M. S. Glenville, 210 F.Supp. 865, 867–868 (S.D. Tex.1962). However, Dixie counters with the assertion that since the fender system is an unlawful obstruction to a navigable waterway pursuant to the Rivers and Harbors Act of 1899, 33 U.S.C. § 403, Dow is presumptively at fault and must prove, as owner of the unlawful obstruction, that the statutory violation could not have caused or contributed to the collision. Dow openly admits that no permit was sought from any governmental agency for construction of the questioned structures, but it contends that the Rivers and Harbors Act does not apply to privately owned artificial waterways such as its barge canal which it owns, maintains and exclusively operates.

■■ Sections 9 and 10 of the Rivers and Harbors Act of 1899, 33 U.S.C. §§ 401, 402, recite that it is unlawful to construct a bridge or create any other obstruction to the navigable capacity of any of the navigable waters of the United States which is not authorized by Congress and for which structural plans have not been approved by the Chief of Engineers and the Secretary of the Army. The purpose of this statute can be stated thusly:

> The requirement of the various statutes in this respect is based upon the theory that the public highways and navigable streams belong to the public, and it is to protect the public in the enjoyment of such right that it is made unlawful to obstruct either a navigable stream or a public highway. Any obstruction not authorized by legislative authority is therefore deemed a nuisance.

F. S. Royster Guano Co. v. Outten, 266 F. 484, 486 (4th Cir. 1920). The Act is premised on the constitutional power of Congress to regulate interstate commerce. See Leovy v. United States, 177 U.S. 621, 632, 20 S.Ct. 797, 44 L.Ed. 914 (1900). A privately owned canal is within the term "navigable water of the United States" if it, in fact, supports interstate commerce. See United States v. Banister Realty Co., 155 F. 583 (C.C.E.D. N.Y.1907); United States v. Doughton, 62 F.2d 936 (4th Cir. 1933); 33 Op.Atty. Gen. 428 (1923). See also United States v. Appalachian Electric Power Co., 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243 (1940); The Montello, 20 Wall. 430, 22 L.Ed. 391 (1874); McKie v. Diamond Marine Co., 204 F.2d 132 (5th Cir. 1953); Gulf & I. Ry. Co. of Texas v. Davis, 26 F.2d 930 (S.D.Tex.1928), aff'd, 31 F.2d 109 (5th Cir. 1929); The Lucky Lindy, 76 F.2d 561 (5th Cir. 1935); North American Dredging Co. of Nevada v. Mintzer, 245 F. 297 (9th Cir. 1917); D'Albora v. Garcia, 144 So.2d 911 (La. Ct.App.1962). Compare United States v. President, etc., of Jamaica & R. Turnpike Co., 204 F. 759 (2d Cir. 1913).

■ In the present case, supplies and goods were constantly being transported by barge to and from the two Dow chemical plants with all such movements being made through the sole use of Dow owned tugs. There was testimony that the DOW HUSTLER made from two to six or eight trips per day on the canal pushing shell and chemical or other barges. These included transporting the finished products of a second concern, located on the waterway, The A. P. Green Co., which were also moved by barge on the waters of the canal to and from the Intracoastal Waterway and thus into interstate commerce. Although there is surprisingly little case authority on the precise point, this Court can reach only one considered conclusion—that the Dow barge canal by virtue of its link with interstate commerce and as a consequence of the character of its commercial use at all times material to this suit is subject to the Rivers and Harbors Act and that the bridge and fender system, because of Dow's failure to satisfy the statute (33 U.S.C. § 401 et seq.), is an unlawful obstruction to the navigation of the canal. Both parties cite the 1923 opinion of the Attorney General as supportive of their

respective positions. However, a close reading of that opinion clearly reveals that approval by the Secretary of War was viewed as necessary for construction of a bridge when erected over private canals on which interstate commerce moves. That being so, certain consequences follow insofar as the burden of proof in a collision case involving such an alleged obstruction is concerned.

█ In United States v. Norfolk-Berkley Bridge Corp., 29 F.2d 115, 125 (E.D.Va.1928), the applicable rule was stated as follows:

> While such [an unlawful] structure may not be injured negligently by a passing vessel with impunity, nevertheless the vessel which strikes it is not presumptively negligent or careless, but the bridge owner is presumptively at fault, unless he can show that the failure to comply with the requirements was not one of the factors or causes which contributed to the injury.

As a result, the usual presumption which dictates that a moving vessel striking a fixed object is at fault is of no avail to Dow in this instance, and it must establish affirmative acts of negligence, or inferences thereof, of the tug's crew in order to recover from Dixie. *See* Savannah & N. Y. Transp. Co. v. Klaren Bridge Co., 252 F. 499 (4th Cir. 1918). Additionally, Dow must overcome the presumption against it by affirmative demonstration as a consequence of all of the proof at the trial that its statutory violation (failure to obtain a permit pursuant to the Rivers and Harbors Act) could not have contributed to the collision.

█ Dixie contends that its motion for judgment at the close of the plaintiff's case should have been granted, since Dow failed to satisfy its burden of making out a prima facie case as to the tug crew's negligence. Were Dow relying solely on the presumption of fault normally arising to implicate a vessel when it strikes a fixed object, there would be merit to this position, as Dow's own statutory violation stripped it of any access to or benefit from such a presumption. However, the plaintiff's case as a whole, while admittedly not extensive, goes further than that and sufficiently satisfies its burden of going forward. This is done by raising the issue of the crew's negligence, particularly through the introduction into evidence of the entries in the tug's logbook:

> 0025 hit R. R. bridge fenderworks with [sic] barge MS607 when generator on boat went dead leaving no lights or steering power.[1]

A tug does not lose its generator capacity and concurrently its rudder power to control its tow in the absence of extraordinary circumstances compelling the offering of some rational explanation. Such a prima facie showing of fault was thereafter firmly established as the negligence of Dixie through cross-examination of its witnesses. Similarly, the testimony of Dow's witnesses pointed up that its statutory violation did not contribute to the collisions, a factor which was amply corroborated by Dixie's witnesses as the proof developed. Accordingly, Dixie's motion for judgment which was repeatedly urged at the trial and thereafter scrutinized closely by this Court is found to be lacking in substance and is therefore denied.

█ The issue as to the non-contributory nature of Dow's statutory violation was the subject of extensive proof at the trial. There was no persuasive evidence forthcoming from any source that the bridge or fender system was hazardous, or, that it, in fact, obstructed the navigation of the canal at times material to this lawsuit. *See* F. S. Royster Guano Co. v. Outten, 266 F. 484 (4th Cir. 1920); William B. Patton Towing Co. v. Spiller, 440 S.W.2d 869, 872 (Tex.Civ.App.—Houston 1969, no writ). There was no indication in the proof that a change in the structure of the bridge or fender system would have prevented the collisions. *See* The Fort Fetterman v. South Carolina State Highway Dept., 261 F.2d 563 (1958),

---

1. Plaintiff's Exhibit No. 10 (entry of April 27, 1967).

modified, 268 F.2d 27 (1959), aff'd after remand, 278 F.2d 921 (4th Cir.), cert. denied, 364 U.S. 910, 81 S.Ct. 272, 5 L. Ed.2d 225 (1960); Wilmington Transp. Co. v. Standard Oil Co., 53 F.2d 787 (9th Cir. 1931). Further, this is not a case in which the crew of the tug could not know the precise conditions which they had to meet in navigating by the structure. *See* United States v. Norfolk-Berkley Bridge Corp., *supra*. Instead, Dow presented significant evidence that Dixie's crew on this tug had been handling barges and passing through this very bridge opening and fender system in both directions for many years with but one occurrence of any note taking place apart from the three incidents made the basis of this suit. In other words, Dixie's tug crew were fully familiar with the various characteristics of this small waterway, none of which had constituted a hazard to navigation in the past. As a consequence, this Court finds that Dow has satisfied the burden placed upon it to demonstrate that the statutory violation in failing to obtain a permit for the bridge and fender system could not have caused or contributed to the collisions in question.

■ Before proceeding to a consideration of the affirmative acts of negligence alleged against Dixie by Dow, certain provisions of the time charter should be noted. Dixie takes the position that as the charterer it is exempted from liability for losses caused by navigation and collision as those terms are set out in Article VII of the time charter. In other words, it is first asserted that the circumstances of the three collisions do not fall within the liability provisions of the charter party, regardless of the fault or negligence of Dixie. Although the charter language is not a model of clarity in this instance, this interpretation of the instrument cannot be accepted. A proper construction of the language of the charter when viewed overall would indicate that Dixie was exempt from liability from the above causes "except [for] negligence of the master, crew or other servants of Dixie. * * * "[2] The charter party further recites that "unseaworthiness, latent defects in machinery or appurtenances of the vessels, or accidents or derangements to machinery" which result in damage are also excluded from liability unless the failure is due to lack of ordinary care in making necessary repairs. *Compare* The Interports No. 767, 92 F.2d 601 (2d Cir. 1937); Berwind White Coal Mining Coal Co. v. United States, 15 F.2d 366 (2d Cir. 1926); Davison Chemical Corp. v. The Henry W. Card, 144 F.2d 705 (2d Cir. 1944). With these various factors in mind, it is appropriate to consider a chronological assessment of the cause or causes of each of the three incidents.

2. Paragraph VII of the time charter provides that:

Dixie shall not be liable for any loss, damage, delay or injury to DOW's operations or DOW's property caused or arising from acts of God, perils of the sea or other waters, or of navigation, collision, stranding, grounding, jettisoning, or wreck; fire or explosion from any cause whatsoever occurring on board or on shore; fault or barratry, except negligence of the master, crew or other servants of DIXIE; public enemies, arrests, seizure, or detention by governmental authority or legal process; strikes, riots, lockouts, stoppage of labor, or labor troubles of DOW or DIXIE; unseaworthiness, latent defects or appurtenances of the vessels, or accidents or derangements to machinery or appurtenances, where such failure is not due to lack of ordinary care in making necessary repairs and maintenance of such machinery or appurtenances; and, without limiting the foregoing in any way, any other cause not due to fault or neglect of DIXIE, its servants, or employees. DIXIE agrees it will indemnify and same harmless DOW from all losses due to the negligence of DIXIE, its agents, servants or employees, arising through or in connection with the performance of this time charter. DOW agrees that it will indemnify and save harmless DIXIE from all loss due to the negligence of DOW, its agents, servants, or employees, arising through or in connection with the performance of this time charter.

Pre-Trial Stipulation No. I, Exhibit No. 2, at 3–4.

### I.

The April 27, 1967, collision occurred while the DOW HUSTLER was pushing only one barge, the MS 607. The barge struck the fender system after a generator aboard the tug allegedly failed, thereby causing a loss of the rudder power as the tug lined up its tow to proceed inbound through the bridge opening. This collision falls within the liability provisions of the charter party implicating Dixie for its own negligence, unless, as it strongly contends, the generator failure can be categorized as a latent defect in machinery unaccompanied by any lack of ordinary care in making necessary repairs by the Dixie crew on board the DOW HUSTLER. The evidence forthcoming at the trial revealed that the failure of the generator was a consequence of the generator brushes working loose and eventually out of their proper position. The tug's captain, Captain Maier, testified that the generator functioned properly after the collision when the brushes were pressed down into place through the use of a screwdriver. Dixie asserts that this fact situation constitutes a latent defect within the meaning of such provisions of the charter party. This Court cannot apply the concept of latent defect to such circumstances.

In The Bill, 47 F.Supp. 969 (D.Md. 1942), aff'd *sub nom.*, Lorentzen v. Brazil Oiticica, Inc., 145 F.2d 470 (4th Cir. 1944), it was pointed out that a latent defect is one that cannot be discovered by any known and customary test. As a result, the Court held that a hole in the bilge pipe of a vessel caused by the corrosive effect of foreign substance resulting from ordinary use of the vessel, and not by a flaw in the metal, was not a latent defect. A true latent defect is not the result of a gradual deterioration or due to ordinary wear and tear. Ernest Construction Co. v. The Tug Commodore, 294 F.Supp. 15, 17–18 (S.D.Ala.1968). It must not be discoverable by the exercise of due diligence. Waterman S. S. Corp. v. United States Smelting, Refining & Mining Co., 155 F.2d 687 (5th Cir.), cert. denied, 329 U.S. 761, 67 S.Ct. 115, 91 L.Ed. 656 (1946). See also The Homer, 99 F. 795 (D.Wash.1900), modified, 109 F. 572 (9th Cir. 1901); The J. N. Gilbert, 222 F. 37 (5th Cir. 1915); Mellon v. Federal Ins. Co., 14 F.2d 997 (S.D.N.Y.1926); American Co. for International Commerce v. United States, 26 F.2d 468 (S.D.N.Y.1928); Churchill v. The Altenower, 39 F. 118 (C.C.E.D.La. 1889), appeal dism'd, 149 U.S. 765, 13 S.Ct. 1043, 37 L.Ed. 957 (1892); The Citta di Palermo, 226 F. 522 (E.D.N.Y. 1914), aff'd, 226 F. 529 (2d Cir. 1915). It follows from the above mentioned authorities that a loose brush in a generator is not a latent defect. There was sufficient testimony at the trial to demonstrate persuasively that the crew of the DOW HUSTLER failed to meet its responsibility to exercise due diligence in maintaining, detecting and repairing the generator before the collision and that such failure was a proximate cause of the loss of rudder power on the tug on April 27, 1967, which in turn, proximately caused the damage to the fender system. Regardless of the fact that Dow agreed to reimburse Dixie ultimately for operating expenses incurred under both the demise and time charters, it is apparent that the operation, management and control of the tugboats including the DOW HUSTLER were Dixie's responsibilities.

### II.

The April 29, 1967, collision occurred at night while the DOW HUSTLER was pushing another barge, the LTC 26. The barge struck the fender system as the tug passed outbound under the bridge. It is stipulated by the parties that the exit to the fender system on this occasion was blocked by one of Dow's barges which had apparently broken loose from its moorings at a nearby pier. Dixie contends that Dow was negligent in allowing the barge to block the fender system exit and thus either caused or contributed to the collision. Dow, on the other hand, contends that the crew of the DOW HUSTLER failed to keep a proper lookout. The evidence

reflects that at the time of the collision a lookout was stationed on the barge. The tug was equipped with a search light, but, inasmuch as the housing on the tug was being lowered at the time preparatory to passing under the bridge, the light was not being utilized by those aboard to watch the tug and tow's approach to the bridge and fender system. If the search light had been properly used in conjunction with the lookout on the barge, the loose barge in all reasonable probability would have been detected well before the tug and tow entered the fender system. This is so because the photographs introduced into evidence at the trial do not reflect any severe limitation on visibility when approaching the railroad bridge from either direction.[3] As a result, this Court finds that the Dixie crew on board the DOW HUSTLER was at fault in failing to keep a proper lookout and that such fault was a proximate cause of the resulting damages to the fender system. *See* Martin Marine Transp. Co., Inc. v. Jakobson & Peterson, Inc., 135 F.2d 325, 328 (2d Cir. 1943); G. B. Zigler Co. v. Barker Barge Line, 167 F.2d 676, 678 (5th Cir. 1948); Placid Oil Co. v. S. S. Willowpool, 214 F.Supp. 449 (E.D.Tex. 1963). *See also* Tidewater Marine Activities, Inc. v. American Towing Co., 437 F.2d 124 (5th Cir. 1970). However, Dixie was not solely at fault in this instance. Although there was sketchy testimony as to what caused an unlighted barge to break loose from the nearby pier, a strong presumption of fault arises as to Dow by virtue of the fact that the barge was inexplicably floating free and blocking the fender system exit. This was not rebutted, and, in fact, it would appear that a securing line was missing. It is undisputed that the care and custody of this barge was Dow's responsibility. Accordingly, this Court finds that Dow is also at fault, that such fault was a proximate cause of the fender damage and that both Dow and Dixie are equally to blame for the collision of April 29, 1967.

### III.

The June 3, 1967, collision occurred while the DOW HUSTLER was made up astern of two loaded shell barges, TB 74 and MS 612, which it was pushing in tandem. The second barge made contact with and became entangled in an existing damaged area in the bridge fender system resulting from one of the prior collisions. Dow contends that the crew of the DOW HUSTLER was negligent in making their approach with the flotilla to the bridge and fender system and in improperly securing the two barges end to end with defective or inadequate lines. Dixie contends that the damage resulted solely from Dow's failure to repair promptly and diligently the fender system following the previous collision on April 27, 1967.

The evidence forthcoming at the trial indicated that the barges during the inbound approach to the bridge and fender system either took suction in a shoal area located in the vicinity of the bridge or were otherwise carelessly maneuvered by the tug when lined up for passage through the fender system. As a result, the two barges made contact with the fender on the port side. Although the lead barge slid by without incident, the impact resulted in the second barge shifting due to an inadequate coupling arrangement so that its port forward corner was exposed. This corner then "hung" in the fender system at a point where the fender had previously been damaged with consequential additional damage. The evidence strongly suggests that this particular fender damage, in all reasonable probability, would not have occurred if the two barges had been properly secured by Dixie's tug crew.

Dixie takes the position, however, that Dow was at fault, since it had, in fact, furnished the coupling gear or lines to the tug and was in overall charge. Dixie cites Tri-Cities Shell & Bldg. Materials Supply Co. v. Welch, 93 F.Supp. 944 (S. D.Tex.1950), to support its position. Reliance upon *Welch*, is misplaced. In that

---

3. Plaintiff's Exhibit Nos. 3, 4, 5.

case the plaintiff was under an obligation to furnish the tug with proper and safe lines. In the present situation Dixie must be viewed as under a contractual duty by virtue of the charter party to use proper gear and to secure the barges properly. That duty was breached. Construed another way, the evidence at the trial clearly reflects that the crew on the tug was negligent in various respects, that is, in failing to maneuver the flotilla with care and in failing to make up the tow properly including the use of faulty or inadequate gear. These faults are found by this Court to be the proximate causes of the damage sustained to the bridge fender system on June 3, 1967.

 Dixie also asserts that Dow was negligent in not promptly repairing the damage that resulted from the first collision on April 27, thereby permitting a condition to exist which caused the second barge to "hang up" in the fender system. From the evidence adduced at the trial, such a contention is too tenuous to be persuasive. Dow's senior designer testified that the repairs were accomplished in timely fashion, considering the replacement materials needed and the circumstances under which the repairs had to be made. Job site bids for the repairs were taken within approximately a week of the April 27 collision. The actual repairs were scheduled to commence shortly thereafter. Dixie presented no convincing evidence to substantiate its claim that repairs were arranged for only after the passage of an unreasonable length of time. *See* Southern Pacific Co. v. United States, 250 F.Supp. 912 (E.D. La.1966). Taking all of the circumstances into account, this Court cannot find that Dixie has made out a valid case so as to indict Dow's actions in this instance.

 It is fundamental that the party suffering damage is entitled to recover the amount required to repair and restore the damaged structure to the condition it was in prior to the collision. American Union Transport Co. v. Aguadilla Terminal, Inc., 302 F.2d 394, 396 (1st Cir. 1962); T. H. Browning Steamship Co. v. F. H. Peavey & Co., 235 F.2d 5, 8 (8th Cir. 1956). The parties initially appeared to stipulate the damages and then recanted. At any rate, the fair and reasonable costs incurred in repairing such damages resulting from the three collisions are found by this Court to be as follows:

| | |
|---|---:|
| Collision of April 27, 1967 | $ 4,750 |
| Collision of April 29, 1967 | 500 |
| Collision of June 3, 1967 | 10,030 |
| Movements of Construction Equipment of Coastal Construction Company (27 times at $75 per occurrence) | 2,025 |
| TOTAL | $17,305 |

Dow has prevailed in its suit for recovery of damages as to all three incidents, although it is found to be equally at fault and must assume one-half of the damages stemming from the second collision of April 29, 1967. Accordingly, taking this factor into account, Dow is entitled to be reimbursed by Dixie for the remaining amount of the reasonable costs expended to repair the fender system which this Court finds to be $17,055 with interest to run from the date of entry of the judgment.

The foregoing constitute the Court's Findings of Fact and Conclusions of Law. Counsel will submit an appropriate judgment within twenty (20) days, incorporating by reference these Findings of Fact and Conclusions of Law and properly assessing Court costs. The clerk will notify counsel.