Argued February 23, affirmed April 23, reconsideration
denied June 5, petition for review allowed July 5, 1979

FAST, *Respondent,*

*v.*

WESTERN TRANSPORTATION CO.,
*Appellant.*

(No. A 7711-16481, CA No. 12257)

593 P2d 1254

William F. White, Portland, argued the cause for appellant. With him on the briefs was White, Sutherland, Parks & Allen, Portland.

William B. Aitchison, Portland, argued the cause for respondent. With him on the brief was Franklin, Bennett, Ofelt & Jolles, P.C., Portland.

Before Thornton, Presiding Judge, and Lee and Gillette, Judges.

GILLETTE, J.

**GILLETTE, J.**

Defendant appeals from a judgment of the trial court, sitting without a jury, finding that defendant negligently damaged plaintiff's dock, and awarding plaintiff $3,600 damages. We affirm.

Plaintiff owns property along the east bank of the Willamette River in Milwaukie, Oregon. When he purchased the property in 1971, it included a float dock on the river. As modified by plaintiff, the dock was held out from the river bank by two types of apparatus: (1) by a gangway; and (2) by 2" by 12" boards secured to the float dock, with the free ends, on wheels, left to work up and down the river bank as the river level changed.

Defendant regularly operates tugboats on the river, which bring barges to and from a sawdust dock located directly across the river from plaintiff's dock, approximately 400 feet away, and has done so since prior to plaintiff's purchase of his property. These tugboats include the Comet, 122 feet long with 3000 horsepower turning twin screws, and the Meteor, 112 feet long with 2250 horsepower turning twin screws. The barges range in length from 150 to 180 feet. Frequently, defendant's tugs maneuver so that the stern of a tug points toward plaintiff's dock, sometimes from a distance of only 20 to 30 feet, so that the wash from the tugboat propellers engulfs the dock. After plaintiff noticed the problem posed by defendant's tugs, he contacted defendant and requested that the tugs use an alternate method to maneuver, either turning further upstream or operating parallel to the sawdust dock, two methods defendant already customarily employed. Defendant, however, continued to operate its tugs on occasion with the stern facing plaintiff's dock. On at least three occasions the wash from defendant's tugboats broke the boards holding plaintiff's dock out from the river bank, and plaintiff repaired the damage. On one occasion, however, high water prevented plaintiff from replacing the broken

[805]

boards, and plaintiff was therefore forced to allow the dock to break up on the river bank. The trial court found that defendant was negligent in operating its tugs so that the propeller wash would damage plaintiff's dock, thereby causing damage in the amount awarded.

■■ Defendant presents four assignments of error. First, he argues that plaintiff constructed and maintained his dock without a permit, in violation of Section 10 of the Rivers and Harbors Act of 1899, 33 USC § 403 (1970).[1] Defendant contends that as a result of this failure to secure a permit for the dock, plaintiff is presumed to be negligent and must carry the burden to show that his fault could not have been a cause of the damage to the dock. That is the law concerning the burden of proof in such cases. *See, e.g., The Pennsylvania,* 86 US (19 Wall.) 125 (1874); *Dow Chem. Co. v. Dixie Carriers, Inc.,* 330 F Supp 1304 (S.D. Tex. 1971); *William B. Patton Towing Co. v. Spiller,* 440 SW 2d 869 (Tex. Civ. App. 1969). Plaintiff concedes that he lacks such a permit, but argues that (1) under 33 CFR §§ 322.4 (c) and (g) (1978), his dock is exempt from the permit requirement, and (2) he needs no permit for the dock, since the Army Corps of Engineers so informed him.

33 CFR §§ 322.4 (c) and (g) provide:

"The following structures or work are hereby permitted for purposes of Section 10 and do not require separate Department of the Army permits:

"* * * * *

---

[1] 33 USC § 403 (1970) provides:

"The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army * * * *"

The parties agree that the Willamette River is part of the navigable waters of the United States covered by this statute.

"(c) The repair, rehabilitation, or replacement of any previously authorized, currently serviceable, structure or of any currently serviceable structure constructed prior to the requirement for authorization; provided such repair, rehabilitation, or replacement does not result in a deviation from the plans of the original structure, and further provided that the structure to be maintained has not been put to uses differing from uses specified for it in any permit authorizing its original construction * * * *
"* * * * *

"(g) Structures or work completed before 18 December 1968 or in waterbodies over which the District Engineer has not asserted jurisdiction provided there is no interference with navigation."

Subpart (g) does not exempt plaintiff's dock, since he modified the dock in several substantial respects, and thus the dock was not "completed" before December 18, 1968. Neither does subpart (c) exempt plaintiff's dock. The undisputed testimony is that plaintiff made several structural changes to the dock, including the addition of a "topper" float, the addition of a boat slip for his 27-foot cruiser, the addition of the 2" by 12" boards to hold the dock out from the bank, the removal of a cable securing the dock to a one-ton cement block resting on the bottom of the river, and the removal of a large ship-chain securing the dock to the bank. The only evidence in the record as to the "plans of the original structure" is the testimony of Beers, the previous owner of the property. Beers testified that when he purchased the property in 1964 the existing dock was approximately six feet by fifteen feet. It was larger at the time it was destroyed. Plaintiff's "repairs" and "rehabilitations" have "result[ed] in a deviation from the plans of the original structure," removing plaintiff from the exemption of 33 CFR § 322.4(c).

Plaintiff, however, contends that the evidence at trial established that he needs no permit for his dock. Plaintiff presented, without objection, uncontradicted

testimony that he contacted the Army Corps of Engineers by telephone and was informed that he needed no permit. On the basis of this testimony and testimony as to a similar experience by Beers, again without objection, the trial court concluded that plaintiff needed no permit for his dock:

> "* * * The only testimony in this case is that both plaintiff and the previous owner communicated with the appropriate authorities, * * * and that they were informed that no license or permit was required for this particular use. The evidence was uncontroverted. No contrary evidence was offered by the defendant."

We are not satisfied that plaintiff's uncontroverted evidence proved that no permit was required for his dock; that issue is a question of law, not of fact. We need only decide a narrower issue here, however: whether plaintiff's inquiries regarding the permit were sufficient to avoid the shift of the burden of proof under the rule of *The Pennsylvania, supra.* The trial court's statements above demonstrate that the court considered plaintiff's efforts regarding a dock permit to be sufficient under the circumstances. We agree. The purpose of the statutory permit requirement is to protect the public in its right to use the navigable streams of the United States free from obstruction. *F.S. Royster Guano Co. v. Outten,* 266 F 484 (4th Cir. 1920). Defendant is a beneficiary of this statute, "premised on the constitutional power of Congress to regulate interstate commerce." *Dow Chem. Co. v. Dixie Carriers, Inc., supra,* 330 F Supp at 1307. *See Leovy v. United States,* 177 US 621, 20 S Ct 797, 44 L Ed 914 (1900). Nevertheless, in the narrow context of these facts as they appear in this case, the public interest is not so strong as to require plaintiff to pursue his inquiries regarding the dock permit further than he did in order to avoid the consequences of the *Pennsylvania* rule.[2]

---

[2] We in no way intend to suggest that the United States would be estopped to require plaintiff to obtain a permit for his dock. *See generally, e.g., United States v. Wharton,* 514 F2d 406 (9th Cir. 1975) and cases cited

■ Defendant next assigns as error the trial court's finding that defendant was negligent in its operation of its tugboats, and that defendant's negligence caused plaintiff's damage. This is an action at law and, therefore, "[t]his court on appeal must view the evidence in the light most favorable to plaintiff and if, in the entire record, there is any competent evidence to support the findings of the trial court, the judgment must be affirmed." *Cronn v. Fisher,* 245 Or 407, 416, 422 P2d 276 (1966). *See Lindsey v. Dairyland Insurance Co.,* 278 Or 681, 565 P2d 744 (1977). There is competent evidence in the record to support the trial court's finding of negligence. Defendant owed to plaintiff the duty to navigate in a reasonable and careful manner, and to cause him no injury from the wash or swells of its tugboats that care and prudence could avoid. *Ohio River Co. v. Continental Grain Co.,* 352 F Supp 505 (N.D. Ill. 1972); *The Rotherfield,* 123 F 460 (S.D. Ala. 1903); *The Morrisania,* 17 F Cas 830 (E.D.N.Y. 1876). Both plaintiff's expert witness and defendant's expert witness testified as to propriety of various maneuvers of defendant's tugboats, including maneuvering so as to direct the stern at plaintiff's dock from close range. These witnesses testified to the effect that it is more prudent and safe seamanship in maneuvering barges into the sawdust dock to turn the tugboat so as to keep the stern toward the sawdust dock rather than toward plaintiff's dock. Plaintiff's witness stated that better visibility of river depth and distance to the sawdust dock rendered this maneuver preferable, while defendant's expert, concurring with plaintiff's, also suggested that the river is too narrow at that point for turning barges. Moreover, testimony by plaintiff, the former owner, plaintiff's expert, and defendant's expert all indicates that damage to plaintiff's dock could have easily been avoided by alternate

therein. Our decision here pertains solely to the effects of the government's statements concerning the dock-owner's duties to obtain a permit upon the shift of burden of proof between the owner and a third party.

[809]

maneuvers already customarily performed by defendant's tugs. The trial court was entitled to conclude from this testimony that defendant's tugboats operated negligently in maneuvering with their sterns toward plaintiff's dock, and that the damage could have been avoided through the exercise of reasonable care.

There is also competent evidence in the record to support the trial court's finding of causation. Both plaintiff and his wife testified that the wash from defendant's tugboats engulfed and battered plaintiff's dock on several occasions, and plaintiff testified that the wash from the tugboats caused the damage. Plaintiff also testified that nothing else ever happened on the river to damage the dock. From this evidence the trial court was entitled to conclude that the negligent operation of defendant's tugboats caused the damage to plaintiff's dock.

■ As its third assignment of error, defendant argues that the trial court erred in not finding that plaintiff was also negligent in (1) failing to construct a more sturdy arrangement to hold the dock out from the river bank than the 2" by 12" planks described above, and (2) in allowing the dock to break up on the river bank. Defendant presented no evidence to show that the "holdout" apparatus was other than proper, or that plaintiff acted improperly in allowing his dock to break up on the river bank. As to this second asserted ground, plaintiff gave uncontroverted testimony that high water prevented him from repairing the dock on the occasion in question. The trial court did not err in refusing to find plaintiff was also negligent.

■ Finally, defendant assigns error to the trial court's failure to find that plaintiff's dock was too frail in construction and design to withstand expectable wash from passing vessels and, therefore, not reasonably fit for its purpose and a menace to navigation. Defendant produced no evidence that plaintiff's dock was flimsy or a menace to navigation, other than the fact of its

[810]

destruction and photographs of the dock before and after its destruction. There is no evidence that the dock did not withstand the stress of normal river traffic and debris, including the wash of defendant's tugboats when they were operating in a non-negligent manner. Plaintiff testified that defendant's tugboats sometimes operated with the stern toward plaintiff's dock from as close as 20 to 30 feet away. The results of this maneuver are not "expectable wash," and we cannot say as a matter of law that plaintiff's failure to build a dock strong enough to withstand this wash over a period of time constitutes negligence. The photographs do not depict a dock so flimsy that we can say, as a matter of law, that it was negligently constructed. Defendant also failed to produce any evidence, such as prior collisions involving plaintiff's dock or testimony that plaintiff's dock necessitated any hazardous maneuvering, that would tend to prove plaintiff's dock posed a menace to navigation.

Affirmed.