Argued and submitted October 2, reversed December 18, 1979

# FAST,
*Respondent,*
*v.*
# WESTERN TRANSPORTATION COMPANY,
*Petitioner.*

## (No. A7711-16481, CA 12257, SC 26239)

604 P2d 400

Alex Parks, of White, Sutherland, Parks & Allen, Portland, argued the cause for petitioner. On the briefs was William F. White, Portland.

William B. Aitchison, of Franklin, Bennett, Ofelt & Jolles, P.C., Portland, argued the cause and filed the brief for respondent.

Erskine B. Wood, of Wood, Tatum, Mosser, Brooke & Holden, Portland, filed the brief amicus curiae on behalf of Columbia River Tugboat Association.

Before Denecke, Chief Justice, and Holman, Tongue, Howell, Linde and Peterson, Justices.

DENECKE, C. J.

Tongue, J., dissenting without opinion.

## DENECKE, C. J.

Plaintiff brought this action to recover damages for the partial destruction of his floating dock. The dock had been moored to plaintiff's property on the Willamette River. Directly across the river from plaintiff's property lies a commercial dock, at which barges are loaded with sawdust. Defendant operates several tugboats, which transport barges to and from the sawdust dock. The river in front of plaintiff's property is only 400 feet wide. In this constricted stretch of the river the defendant's tugs often maneuvered barges ranging in length from 150 to 180 feet. In the course of these maneuvers the wash from the tugboat propellers sometimes engulfed the plaintiff's floating dock. This constant pounding eventually tore the dock from its moorings and caused it to partially break up on the bank.

The trial court, sitting without a jury, found that the defendant negligently permitted the propeller wash from its tugs to damage the dock, and awarded plaintiff damages. The Court of Appeals affirmed the judgment. *Fast v. Western Transportation Co.*, 39 Or App 803, 593 P2d 1254 (1979). We granted review and reverse.

The petition for review presents only one question for our consideration. Defendant maintains that plaintiff's dock was an "illegal structure," because plaintiff had never applied for or received a permit from the Secretary of the Army (Corps of Engineers), as required by 33 USC § 403 (1976).[1] Defendant further contends that when a vessel damages a dock built in a navigable river but lacking the required permit, the

[1] The statute provides, in pertinent part:

"[I]t shall not be lawful to build or commence the building of any wharf, pier, * * * or other structures in any port, roadstead, haven, harbor, canal, navigable river or other water of the United States * * * except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army; * * *".

All parties agree that the Willamette is a navigable river of the United States, and that plaintiff never obtained a permit for the dock.

[195]

owner of the dock is presumed to be negligent. In order to recover he must show that his statutory violation *could not* have been a cause of the damage to the dock. The trial court declined to impose any such presumption of negligence. This the defendant assigns as error.

The rule of law defendant would have us apply derives from the holding of the United States Supreme Court in *The Pennsylvania*, 86 US 125, 22 L Ed 148 (1874). That case involved a collision between two vessels in a dense fog. A federal statute provided that fogbound sailing ships shall sound a horn when under way, and a bell when not under way. One of the vessels sounded a bell, even though it was moving. The Supreme Court held:

> "The liability for damages is upon the ship or ships whose fault caused the injury. But when, as in this case, a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. In such a case the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been. Such a rule is necessary to enforce obedience to the mandate of the statute." 86 US at 136.

The *Pennsylvania* rule has been criticized for its severity,[2] but American courts have followed it in all maritime collision cases where one of the parties violated a statutory rule intended to prevent collisions. The *Pennsylvania* rule has been applied to collisions between vessels and structures lacking the permit required by 33 USC § 403. *See, e. g., United States v. Norfolk-Berkley Bridge Corp.,* 29 F2d 115, 125 (ED Va 1928); *Board of Commissioners v. M/V Agelos Michael,* 390 F Supp 1012 (ED La 1974); *Dow Chemical Co. v.*

[2] *See, e.g.,* J. Griffin, The American Law Collision 201 (1949): "It may perhaps be regretted that the word 'could' was employed in the statement of the rule in *The Pennsylvania.* In almost any instance of fault it is possible to imagine that the fault 'could' have had *some* relation to the accident * * *."

*Dixie Carriers, Inc.,* 330 F Supp 1304, 1308 (SD Tex 1971), *aff'd* 463 F2d 123 (5th Cir), *cert den* 409 US 1040, 93 S Ct 525, 34 L Ed 2d 490 (1972); *William B. Patton Towing Co. v. Spiller,* 440 SW2d 869 (Tex Civ App 1969).

Plaintiff's response to the statutory violation argument is that his dock did not need a permit. The plain language of the statute would appear to require a permit for any obstruction to the navigability of the Willamette, including "any wharf, pier, * * * or other structures * * *." But a regulation promulgated by the Corps of Engineers introduces some uncertainty. 33 CFR §§ 322.4 (1979) exempts certain structures and work from the requirements of 33 USC § 403, including:

"(c)  The repair, rehabilitation, or replacement of any previously authorized, currently serviceable, structure or of any currently serviceable structure constructed prior to the requirement for authorization; provided such repair, rehabilitation, or replacement does not result in a deviation from the plans of the original structure, and further provided that the structure to be maintained has not been put to uses differing from uses specified for it in any permit authorizing its original construction;

"* * * * *.

"(g)  Structures or work completed before 18 December 1968 * * *."

Plaintiff contends that his dock was "grand-fathered" by the above regulation, because the dock had been there prior to 1968, and because the modifications which plaintiff made to the dock did not "result in a deviation from the plans of the original structure." Plaintiff testified that he had telephoned the Corps "back quite some years ago," and "they" told him he did not need a permit. The plaintiff never indicated with whom he spoke.

Defendant presented evidence that plaintiff substantially modified the dock after he acquired it in 1971. Plaintiff added a "topper" float, replaced a boathouse with a boat slip, changed the means by

which the dock was anchored in the river, and added a steel gangway. Curiously, neither side presented evidence to show how the Corps construes its own regulation. Such evidence would not be conclusive, for the applicability of a regulation to a particular set of facts is a question of law about which a court must always draw its own conclusions. *Kirkpatrick v. Peet,* 247 Or 204, 211, 428 P2d 405 (1967). However, we accord considerable weight to the views of an agency concerning the interpretation of statutes with which it deals on a regular basis. *Rogers Construction Co. v. Hill,* 235 Or 352, 356, 384 P2d 219 (1963).

The trial court treated the question of plaintiff's compliance with 33 USC § 403 as an issue of fact. The court ruled from the bench as follows:

> "The only testimony in this case is that both plaintiff and the previous owner communicated with the appropriate authorities, whether that is the Corps of Engineers or whoever, and that they were informed that no license or permit was required for this particular use. The evidence was uncontroverted. No contrary evidence was offered by the defendant."

The Court of Appeals concluded that the trial court was in error on this point, holding that the issue of plaintiff's compliance is a question of law, not of fact, and that the modifications to the dock "have 'resulted in a deviation from the plans of the original structure,' removing plaintiff from the exemption of 33 CFR § 322.4(c)." 39 Or App at 807. Nevertheless, the Court of Appeals affirmed the judgment, reasoning that "in the narrow context of these facts as they appear in this case, the public interest [in freely navigable waterways] is not so strong as to require plaintiff to pursue his inquiries regarding the dock permit further than he did in order to avoid the consequences of the *Pennsylvania* rule." 39 Or App at 808.

We agree with the Court of Appeals that plaintiff's dock did not fall within the exemption of 33 CFR § 322.4(c) and (g). There is no issue of fact concerning

plaintiff's modifications to the dock. The evidence on that point came from the plaintiff himself. Neither party cited any case or administrative ruling in which a court or the Corps construed the critical language of 33 CFR § 322.4: "provided such repair, rehabilitation or replacement does not result in a deviation from the plans of the original structure," nor could we find any authority on point. Until 1977, Corps regulations grandfathered only structures or work completed by 1968. 33 CFR § 209.120(g)(12)(vii) (1976). In 1977 the Corps promulgated the language quoted above. 42 Fed Reg 37121, 37140 (1977). The explanatory text accompanying the new rules stated only that "no deviation from original plans is authorized." *Id.* at 37126. If that is the standard, we hold that the work plaintiff performed, including a change in the basic method for anchoring the dock in the river, resulted in several deviations from the plans of the original structure.

The Court of Appeals held, however, that even if the exemption does not apply, plaintiff should not have to bear the burden imposed by the *Pennsylvania* rule, when the Corps of Engineers told him that the dock did not need a permit. With this conclusion we cannot agree. The regulations of the Corps provide that any person proposing to construct a float-supported platform in a navigable river must file a written application form with the District Engineer. 33 CFR § 325.1(b) (1979). The application must include certain pertinent information, including sketches or plans, the location and intended use of the structure, the names and addresses of adjacent property owners, and the location and dimensions of adjacent structures. *Id.,* § 325.1(c)(1), (4). Had the plaintiff followed this procedure and then been told by the Corps that no permit was required, the plaintiff would have done everything within his power to comply with the statute. The policy underlying the *Pennsylvania* rule—"to enforce obedience to the mandate of the statute"[3]—

---

[3] *The Pennsylvania,* 86 US 125, 136 (1874).

would have been carried out. Under those circumstances, there would be no reason to impose a harsh presumption of negligence, even if a correct reading of the regulation would require the Corps to issue a permit for the dock.

The facts of this case are much different. At no time did plaintiff file anything in writing with the Corps. The only evidence in the record of plaintiff's effort to comply with the statute is his testimony that "back quite some years ago" he telephoned some unnamed government employe, "and they said it wasn't necessary." The record does not indicate with whom the plaintiff spoke, what that person actually said, or what information plaintiff furnished concerning the details of his proposed modifications to the dock. In short, the evidence did not show that a responsible official of the Corps advised plaintiff, after reviewing his plans, that a permit would not be necessary.

A similar issue arose in *United States v. Sunset Cove,* 5 ERC 1023 (D Or 1973), *affd in part,* 514 F2d 1089 (9th Cir) *cert den* 423 US 865, 95 S Ct 125, 46 L Ed 2d 94 (1975). In that case the federal government brought a civil action against a corporation which violated 33 USC § 403 by creating an elevated sandspit in the estuary of the Necanicum River, near Seaside, Oregon. There were questions as to whether the river was navigable, and whether the locations where defendant dumped debris fell within the boundaries of the navigable servitude. The defendant did not apply for a permit prior to commencing the work, but an officer of the defendant called an unidentified individual in the Portland office of the Corps, who allegedly told him it was safe to stay above six feet. 5 ERC at 1027. A Corps employe who visited the project site allegedly said the same thing. Defendants claimed that the government was thereby estopped to object to the land fill. The court rejected this argument:

"The telephone inquiries to Corps employees in Seattle and Portland are an insufficient basis for

estoppel. There is no written record of these calls, and the only evidence of them was the recollection of one of defendant's owners. The identity of the second official is unknown. Neither of them had defendant's plans before them, and it is unclear in what context the answers were given. * * * Had [the defendant] made an application in advance to the Corps for a permit, or at least if it had made an inquiry and provided the Corps with complete plans of its intentions, its position would be less vulnerable. By failing to take advantage of the opportunity which it had, not only did it forfeit a claim to a right of estoppel, but it also deprived the Corps of a means whereby its attention could have been formally directed to issue." 5 ERC at 1028-29.[4]

See also *Potomac River Assn., Inc. v. Lundeberg Maryland Seamanship School, Inc.,* 402 F Supp 344, 355 (D Md 1975), in which the court held that the Corps may make decisions under 33 USC § 403 only when presented with a permit application.

Plaintiff may not rely on his casual inquiry to excuse noncompliance with the permit requirement. Having determined that the dock required a permit, that it did not have one, and that plaintiff did not have a right to rely on an oral exemption from an anonymous official, we conclude that the trial court should have applied the *Pennsylvania* rule.

As noted above, the rule imposes an onerous burden on the statutory violator. In order to prevail the plaintiff would have had to show that his failure to obtain a permit and to comply with any conditions attached to the permit could not have caused or contributed to the injury. In this case, that would have

---

[4] In *Sunset Cove*, the issue of a citizen's right to rely on statements from officials of the Corps regarding the need for a permit arose in the context of an estoppel claim in litigation between the government and a private party, rather than as an issue in litigation between two private parties. In both cases, however, the court is asked to excuse noncompliance with a statute on the ground that the citizen relied on a statement by an official of the agency in charge of administering the statute. In both cases, the issue is whether the citizen had reasonable grounds to rely on the statement as a definitive summary of his legal obligations.

meant showing that the Corps could not have required plaintiff to build a sturdier dock, as a condition to the issuance of a permit. Plaintiff did not advance that argument, nor could he have done so. 33 CFR § 325.5(a)(2) (1979) provides that "Special conditions applicable to the specific activity will be included in the permit as necessary to protect the public interest." 33 CFR § 322.5(d) (1979), states:

"Particular attention will be given to the location and general design of [small boat docks] to prevent possible obstructions to navigation with respect to both the public's use of the waterway and the neighboring proprietors' access to the waterway. Obstructions can result from both the existence of the structure * * * and from its inability to withstand wave action or other forces which can be expected."

The trial court found that defendant's negligence subjected the dock to greater stress than could have been expected from the normal passage of river traffic. That may be so, but we cannot say that the Corps could not have mandated structural improvements, as "insurance" against the type of damage that ultimately occurred. The possibility that compliance with the permit requirements might have prevented the accident is fatal to plaintiff's claim, however unlikely it may be that the Corps would have mandated improvements as a condition to the issuance of a permit.

Reversed.

Tongue, J., dissenting.