STATE OF OREGON,
*Respondent,*

*v.*

RALPH A. HATLEY,
*Appellant.*

(No. CR79-1381, CR79-1382, CA 16721)

617 P2d 902

Patrick A. Butler, Portland, argued the cause for appellant. With him on the briefs were Luebke & Wallingford and Charles H. Combs, Portland.

Jan P. Londahl, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

THORNTON, J.

## THORNTON, J.

Defendant appeals from his conviction on two charges of unlawfully operating an airport in violation of ORS 492.240. He raises three assignments of error:

1) That the trial court erred in overruling defendant's demurrer to the complaints on the ground that they fail to state facts that constitute a crime;

2) That the court erred in overruling defendant's demurrer to the complaints on the ground that they are too indefinite and uncertain; and

3) That the defendant was deprived of a fair trial by prejudicial conduct of the bailiff.

We affirm.

The complaints, which are identical in form except as to the date of the alleged offense, allege:

"The above named defendant on or about * * * committed the crime of unlicensed operation of an airport, Oregon Revised Statute No. 492.240, as follows, to wit: The said defendant in the County of Clackamas, State of Oregon, on the date alleged did then and there unlawfully and with criminal negligence operate an airport without a license for such, said act of defendant being contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

ORS 492.240 states:

"Except as provided by ORS 492.160, no person, municipality or officer or employe thereof, shall operate an airport without an appropriate license for such, as is duly required *by rule or regulation issued pursuant to ORS 492.210.*" (Emphasis supplied.)

Airport is defined very broadly in ORS 492.010(7) as

" * * * [a]ny area of land or water, within or without this state, which is used, or intended for use, for the landing and take-off of aircraft, and any appurtenant areas which are used, or intended for use, for airport buildings or other airport facilities or rights of way, together with all airport buildings and facilities located thereon."

Licenses are available upon submission of certain information relating to layout, dimensions, safety features and type of use. ORS 492.210[1]; OAR 731-20-020(1), 731-20-035. OAR 731-20-015(3)(g) defines "operation of an airport" as follows:

> "*For any purpose other than use on an occasional basis, as determined by the Administrator,* any person * * * who offers for use, or permits use of an aircraft landing area under his control for landing or take-off of aircraft; or any person who uses such an area for aircraft landing or take-off, with or without the permission of the owner, shall be deemed to be 'operating' an airport within the meaning of ORS 492.240 * * *." (Emphasis added.)

ORS 492.160 permits the department to exempt certain classes of airports from any or all regulations so long as the exemption will not adversely affect public safety.[2] Such an exemption for occasional use of personal use airports has been created in OAR 731-20-015(3)(g). Personal use airports in this classification

---

[1]

"Except as provided in ORS 492.160 the department is authorized to provide for the licensing of airports and the annual renewal of such licenses. It may charge license fees not exceeding $1 for each original license, and not exceeding $1 for each renewal thereof. Upon the promulgation of a rule or regulation providing for such licensing, the department shall with reasonable dispatch, upon receipt of an application for an original license and the payment of the duly required fee therefor, issue an appropriate license if it is satisfied that the airport conforms to minimum standards of safety and that safe air traffic patterns can be worked out for such airport and for all existing airports and approved airport sites in its vicinity. All licenses shall be renewable annually upon payment of the fees prescribed. Licenses and renewals thereof may be issued subject to any reasonable conditions that the department may deem necessary to effectuate the purposes of ORS 492.170 to 492.240." ORS 492.210.

[2]

"* * * *The department may, from time to time, to the extent necessary, exempt any other class of airports, pursuant to a reasonable classification* or grouping, *from any rule or regulation* promulgated under ORS 492.170 to 492.240, or from any requirement of such a rule or regulation, if it finds that the application of such rule, regulation or requirement would be an undue burden on such class and is not required in the interest of public safety." ORS 492.160. (Emphasis supplied.)

are nevertheless required to register annually with the Division.[3] OAR 731-20-030(2).

OAR 731-20-015(3)(h) defines "occasional" as follows:

> "Infrequent, irregular, or from time to time *as determined by the Administrator.* In making this determination, the Administrator shall consider compatibility with the existing uses of the surrounding area." (Emphasis supplied.)

■   Taking up defendant's first point, namely that the complaints fail to state facts sufficient to constitute a crime, the complaints, in pertinent part, allege that defendant on two occasions in April, 1978, "unlawfully and with criminal negligence operated an airport without a license * * *." The language of the complaints parallels the statutory language, which is generally sufficient to withstand a demurrer. *State v. Nussbaum,* 261 Or 87, 91, 491 P2d 1013 (1971). They are not rendered defective by the fact that a defendant must resort to other statutes or regulations to determine more specifically what types of conduct are chargeable. *State v. Shadley/Spencer/Rowe,* 16 Or App 113, 122, 517 P2d 324 (1973). The wording of the regulation appears to us to satisfy the "ordinary and concise" standard of ORS 133.015(7)[4]. *State v. Keys,* 25 Or App 15, 22, 548 P2d 205, *rev den* (1976).

Next, defendant contends that the complaints are vague and uncertain because the statute and regulations are unconstitutionally vague, more particularly because personal use airports (defined in OAR 731-

---

[3] To register, a person is required to obtain site approval (OAR 731-20-025) and fill out a form annually. OAR 731-20-030(2). License requirements include those for site approval. OAR 731-20-035(1).

[4]

"(1) An information or complaint shall contain substantially the following:

" * * * * *

"(7) A statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended * * *." ORS 133.015(7).

20-015(2)(c)[5] are exempt from licensing requirements when used on an "occasional basis," and there is no way for him to determine whether his use is "occasional." OAR 731-20-105(3)(g).

■     The state argues in response to defendant's contention that the difficulties surrounding application of the term "occasional" are irrelevant for purposes of determining whether the statute and regulations are vague because the chargeable offense is not operation of an airport on an other-than-occasional basis, but the operation of an airport without a license. The state's argument presupposes that the statute and regulations require every person whose conduct (offering, permitting or actual use) otherwise subjects him to regulation to apply for a license or in some manner obtain an administrative determination of his exempt status. We agree.

The statute (ORS 492.240) makes it a crime to operate an airport without a license "duly required by rule or regulation." The statutes and regulations, read together, evidence a clear intent that every land or water area where aircraft take off and land be brought to the attention of the Division and that records of use of these areas be periodically updated to enable a complete inventory of such locations. Such an inventory is desirable in order to regulate air traffic effectively, to ensure safe operating conditions and to supply emergency landing information to distressed aircraft.

■     Defendant argues that the regulations do not state directly that every person within the ambit of the

---

[5]   "(2) Types of airports:

" * * * * *

"(c) 'Personal-Use Airport', as used in this rule means an airstrip restricted, except for aircraft emergencies, to use by the owner and, on an infrequent and occasional basis, by his invited guests, and to commercial activities in connection with agricultural operations only. No aircraft may be based on a personal-use airport other than those owned or controlled by the owner of the airport. Exceptions to the activities permitted under this definition may be granted through waiver action by the Aeronautics' Administrator in the specific instances." OAR 731-20-015(2)(c).

statute must either obtain a license or an administrative determination of exemption, and there is no procedure set forth in the regulations by which a person who believes his or her use to be occasional may obtain administrative corroboration. It would frustrate the purpose of the licensing requirements, however, if every person were free to unilaterally determine that a particular pattern of use constitutes "occasional" use and therefore exempts him from regulation. Further, it is clear from the definition of "occasional" that its application hinges not only on the frequency of use but on the character of the surrounding area. Other unenumerated factors might be relevant as well, such as the intensity of other air traffic in the area and the existence of natural hazards to aircraft, factors as to which the Division is no doubt better informed than the private citizen. The flaw in defendant's argument is that the standard for exemption is not "occasionalness," but "occasionalness, as determined by the Administrator." A statutory scheme is not unconstitutionally vague merely because it provides for flexible agency determination. *See State v. Williams,* 37 Or App 419, 422-23, 587 P2d 1049 (1978).

The statute and regulations clearly require that every person making or permitting use of an area for aircraft operation submit his or her particular circumstances to the agency. Failure to obtain a license or a determination that no license is required subjects a person to criminal charges.

Defendant's argument that he could not tell from the complaint which of the three types of conduct (offering, permitting or actually using) he is being charged with is specious. Contrary to defendant's contention, the full range of criminal statutory discovery provisions (ORS 135.805 to 135.873) were available to apprise defendant of the precise incidents involved. Included in the exhibits is a witness statement dated April 3, 1978, discoverable under ORS 135.815(1)[6],

---

[6]    "Except as otherwise provided in ORS 135.855 and 135.873, the

detailing take-offs and landings associated with defendant's skyjumping business which occurred on April 1, 1978, the date charged in the complaints. There was no contention defendant was actually surprised by the evidence so as to entitle him to a continuance. *State v. Shadley/Spencer/Rowe, supra.*

Nor is the complaint indefinite in not pleading that defendant was not exempt from licensing by virtue of his occasional use of the strip. *State v. Alexander,* 6 Or App 526, 531-32, 487 P2d 1151, *rev den* (1971); *State v. Reams,* 47 Or App 907, 616 P2d 498 (1980). As we have stated, the criminal act is operating an airport without a license. If defendant maintains he is exempt from licensing, he must allege as a matter of defense that he has obtained an administrative exemption.[7] We find no error here.

## BAILIFF MISCONDUCT

A juror was approached by a woman the juror had observed in court who remarked to the juror that it must be difficult to decide cases like the present one. The juror reported to the bailiff that it upset her because she thought the woman might be a Ms. Gay, whose name had been mentioned in testimony and who was charged in another case involving the same airstrip. The bailiff replied that from the juror's description the woman was not Ms. Gay but a person who had asked if she could sit in on the proceeding and take notes. These facts were brought by the bailiff to the court's attention. The woman was identified in court

---

district attorney shall disclose to the defendant the following material and information within his possession or control:

"(1) The names and addresses of persons whom he intends to call as witnesses at any state [sic] of the trial, together with their relevant written or recorded statements or memoranda of any oral statements of such persons." ORS 135.815(1).

[7] *See Fast v. Western Transportation Co.,* 288 Or 193, 199-200, 604 P2d 400 (1979) (defendant entitled to presumption that plaintiff was negligent because plaintiff failed to formally submit plans and other information concerning his dock to Corps of Engineers to obtain exemption from licensing even though plaintiff testified that someone at the Corps had told him over the phone that he did not need a license).

and testified that she had no interest in the case. Her remark had been that it must be hard to listen to all the different testimony. The juror stated that she was satisfied. Defense counsel had no objection to the juror's remaining on the case, but moved for a mistrial on the ground of bailiff misconduct in responding directly to the jurors. The other jurors denied that the incident, which they had overheard, would adversely affect their impartiality. The motion for mistrial was thereupon denied.

At the time of trial ORS 17.305, since repealed,[8] provided that a bailiff

" * * * must not suffer any communication to be made to [the jury], nor make any himself, unless by the order of this court * * *."

Assuming that the communication was a violation of the statute, no discernible prejudice resulted from it. The juror responded conscientiously to the situation and the bailiff on his own took the matter up with the court. We perceive no reason to doubt the impartiality of this jury. Cf. *State v. Rathbun,* 287 Or 421, 600 P2d 392 (1979) (bailiff's remarks in armed robbery trial about judge's sentencing habits where a gun is involved, the range of sentences and the insight to be gained about criminals from riding in a police car were prejudicial).

Affirmed.

---

[8] 1979 Oregon Laws, ch 284, § 199.